Evis Jean BELL

v.

BRANIFF INTERNATIONAL AIRWAYS.

No. CA 3-76-0503-C.

United States District Court, N. D. Texas, Dallas Division.

June 28, 1979.

E. Brice Cunningham, Dallas, Tex., for plaintiff.

Amos Moses, Braniff Airways, Inc., Dallas, Tex., for defendant.

MEMORANDUM OPINION

WILLIAM M. TAYLOR, District Judge.

Plaintiff brought this suit against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981 on April 7, 1976. This filing was timely as to her Title VII claim as she was issued a right to sue letter covering this matter on March 1, 1976, and had filed her charge of discrimination against Defendant with the Equal Employment Opportunity Commission on April 1, 1974, after having been terminated by Defendant on March 29, 1974.

The Court therefore finds that it has jurisdiction in this case [1] as to these allegations.

Plaintiff's 42 U.S.C. § 1981 allegations are not timely as she did not file this civil action within two years of her termination.[2]

Plaintiff was originally hired as a key punch operator in the spring of 1969 by Defendant and was terminated due to a reduction in force at the end of November of that year. The collective bargaining agreement then in effect between Defendant and the Union representing the class of employees that Plaintiff was a member of

---

1. Defendant has pressed the claim that Plaintiff has not proffered evidence to show that it is an employer covered by Title VII. Though imperfect the Court deems the proof adequate. Moreover, Defendant's answer states in paragraph "5" that the allegations of Plaintiff's "Paragraph V" are admitted. "Paragraph V" of the complaint alleges that Defendant is an employer within the meaning of Title VII.

2. See *Johnson v. Goodyear Tire and Rubber Co.*, 491 F.2d 1364 (5th Cir., 1974) and *Dupree v. Hutchins*, 521 F.2d 236 (5th Cir., 1975).

allowed for a two-year furlough period. Plaintiff was not recalled to work within two years of November, 1969, so she lost all rights under the collective bargaining agreement. By December 1, 1971, she was legally a stranger as to Defendant and would have had to apply anew for a position with Defendant. She did not do so until February 4, 1974. Under the rule announced in *Evans v. United Airlines*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), Plaintiff lost all right to file a charge of discrimination with the E.E.O.C. as to her November 30, 1969, termination no later than the close of business on the 90th day after November 30, 1971.

As Plaintiff was hired, although in a temporary position, on the day that she applied for a job in 1974 and went to work the next day, she cannot complain about her hiring by Defendant. Her sole complaint upon which the Court can rule is whether or not she has proven that she was illegally discriminated against when she was terminated on March 29, 1974, instead of being made a permanent employee.

The answer to that question is that she has not proven her case.

The parties appear to be in agreement that the case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is in point. The Supreme Court held in that case that a plaintiff must go forward with evidence to show a prima facie case of discrimination and if the prima facie case is made out, the burden of going forward with evidence shifts to the defendant who must show that discrimination had no part in its decision to not hire the plaintiff. The Supreme Court went on to lay out four points which a plaintiff must prove to establish a prima facie case of discrimination. They are:

1) Plaintiff is a member of a group protected by Title VII;

2) Plaintiff applied for and was qualified for a job for which the defendant was seeking applicants;

3) Plaintiff was rejected by defendant; and

4) After the rejection, the position was still open and the defendant was still accepting applications from persons with the same qualifications as the plaintiff.

The present case is slightly different in that Plaintiff complains that she was not made a permanent employee after being hired as a temporary employee. There has been no showing that on February 4, 1974, that Defendant had any other openings in Plaintiff's job classification other than the temporary one for which she was hired. So our inquiry is only as to positions that came after February 4 or 5, 1974.

Defendant only hired four key punch operators into permanent positions in 1974. One was hired in January, two in March, and one in April. Of course, the January position is irrelevant as it was filled before Plaintiff applied for a position.

First of all, Plaintiff never showed what the qualifications of the three people who were hired were. So Plaintiff has not met her initial burden of going forward with evidence to show that Defendant was accepting applicants with her qualifications.

As to the two March vacancies, Defendant presented clear, credible evidence that the person who hired for these positions started to take applications some time after Plaintiff had been hired. Also, no one, within the knowledge of the witnesses, had been taken off a temporary work assignment and been made permanent in another position. The reasoning, besides being articulated by the witnesses, is apparent. A temporary employee is usually hired to fill in a gap which must be bridged quickly and efficiently. To shift temporary employees before their task is completed is counterproductive. So Defendant has shown nondiscriminatory reasons for not transferring Plaintiff into either of the March openings. The Court finds that illegal discrimination played no part in Defendant's filling of the March openings.

Not only has Plaintiff failed to show that the person hired for the April position had qualifications no better than hers, but, Defendant brought forth adequate evidence to

show why the person hired was hired instead of Plaintiff.

Defendant had two reasons for selecting Beverly Sandlin, the person hired, instead of Plaintiff. The first was that Sandlin had eight months experience working on the machine which she would be working on for Defendant. Plaintiff had had no experience on that machine. Second, Taft, the supervisor who made the decision to hire Sandlin, testified that he obtained Sandlin's absenteeism records from her prior employers and found it to be good where in his judgment Plaintiff's was not. He had obtained Plaintiff's records for both 1969 and 1974.

Upon reviewing these records which were introduced at trial, the Court cannot find that Taft was acting unreasonably when he found Plaintiff's absenteeism record excessive.

Plaintiff did explain that her family home had burned down in February, 1974, that she had notified her supervisor of such, and that this accounted for her absenteeism. The Court can well see why this would have caused Plaintiff to be absent substantial periods of time. But it does not explain why Plaintiff was late to work fifteen minutes on many days. Plaintiff had no explanation for her absenteeism record in 1969. The Court finds that Defendant had adequate reasons for hiring Sandlin, not Plaintiff, and that there was no illegal discriminatory intent or effect involved in the hiring of Sandlin.

It is doubtful that these three new employees worked very long for Defendant. At about the time that Plaintiff was terminated, three permanent employees in her job classification were terminated. They had seniority rights under the collective bargaining agreement then in force. These rights allowed them to bump others in the same classification in case of termination. Of course, this led to other employees bumping until the persons with the least seniority had no one to bump and were terminated. So Plaintiff has not shown that the persons hired in March and April stayed employed very long.

Upon these findings, the Court will enter judgment for Defendant.